## Allen E. Faust *v.* The Philadelphia and Reading Railway Company.

*Negligence—Death of children of tender age—Parent and child—Joint negligence—Master and servant.*

Where a servant without his master's authority or consent, express or implied, takes his master's infant children into a wagon, in which he delivers his master's goods, and the children are killed by the joint negligence of the servant and a railroad company, the father may recover damages from the railroad company for the death of his children.

*Negligence—Railroads—Running trains—Crossings.*

The mere fact that the rumbling of a train may be heard for more than a mile from a crossing will not relieve the railroad company from taking the precautions which are deemed proper and necessary in approaching a crossing.

Argued March 1, 1899.   Appeal, No. 95, Jan. T., 1899, by defendant, from judgment of C. P. Berks Co., Dec. T., 1897, No. 21, on verdict for plaintiff.  Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.   Affirmed.

Trespass to recover damages for the death of plaintiff's children.

The facts appear by the opinion of the Supreme Court, and the opinion of the lower court.

Defendant's points and the answers thereto were as follows:

1. It is the duty of a railroad company to give notice of the approach of its trains to a crossing, so that a traveler on the highway who performs his duty of stopping and listening, can hear the coming of a train in time to avoid danger (and it is immaterial whether notice of the approaching of the train is

given by the watchman, by the whistle or ringing of a bell, or the noise of the train itself) ; and the undisputed evidence in this case, both of the plaintiff and defendant, showing that the stock train in the present case was distinctly heard by persons at and about Frush Valley crossing, during all the time that the train was traveling from a point half a mile or more away from the crossing down to the crossing ; and it being evident that Hiester, the driver who had charge of the plaintiff's children, could have heard the noise of this approaching train if he had stopped and listened, the whole duty of the railroad company was performed, and the jury are not warranted in finding the defendant guilty of negligence, and the verdict must be for the defendant. *Answer :* Declined and not read to the jury. [1]

2. There is no evidence in this case that the crew in charge of the stock train was incompetent, nor is there any evidence that will warrant the jury in finding negligence from the fact that the engine was run with the tank ahead ; nor is there any evidence that the train was run at too great a speed, and if the court will submit to the jury the question whether the defendant was guilty of any negligence (against which submission, we, however, protest), we respectfully request that the court confine the investigation of the jury to the simple question whether sufficient notice of the approach of the train was given to enable a traveler on the highway to hear it coming in time to avoid danger, if such traveler had performed his duty to stop, look and listen. *Answer :* Declined and not read to the jury. [2]

3. The undisputed evidence of the plaintiff and defendant in this case showing that Hiester, the driver of the wagon, who had the plaintiff's children in charge, had a clear and unobstructed view of the train in the direction of the approaching train for a distance of at least 1,000 feet from a point twelve feet from the nearest rail, had he stopped and looked ; and the uncontradicted evidence in the case showing further that the said Hiester did not stop, look and listen as he approached the Frush Valley crossing, the said Hiester was guilty of contributory negligence; and it further appearing from the plaintiff's own evidence that the said Hiester was a member of the plaintiff's family at the time of the accident and for eight years prior thereto, and in whose charge the plaintiff's children were accustomed to be intrusted by the plaintiff, the negligence of

the driver, Hiester, is imputed to the plaintiff and the plaintiff is not entitled to recover. *Answer :* Declined and not read to the jury. [3]

4. Under all the evidence in the case, the verdict must be for the defendant. *Answer :* Declined and not read to the jury. [4]

Verdict and judgment for plaintiff for $3,500. Defendant appealed.

ENDLICH, J., filed the following opinion on a rule for a new trial and for judgment in favor of the defendant non obstante veredicto.

On the question of negligence on the part of the defendant's servants in the running of the engine which killed plaintiff's children, there was sufficient evidence to require submission to the jury. It cannot be successfully contended that, regardless of the speed at which the engine, running backwards, was permitted to go; regardless of whether or not the fireman who acted as engineer was the proper person to do so; regardless of whether or not he was vigilant and careful to observe what was going on ahead of him; regardless of whether or not the whistle was sounded at the place designated for that purpose by the defendant company itself, or the bell rung near the crossing; regardless of whether or not the attention of the fireman, acting as engineer, was distracted from his duty by the presence and conversation of the other three persons who rode with him in the cab (see Schnur v. Traction Co., 153 Pa. 26), indeed, regardless of every consideration affecting the question of the exercise by the persons in control of the engine of proper care under the circumstances, the defendant company is, as a matter of law, to be declared to have performed its full duty towards travelers upon the highways crossed by its railroad, by reason of the single and undisputed fact that the rattling and rumbling of the engine were such as to be heard more than half a mile away. That fact obviously has no bearing whatever upon the question of negligence on the part of the railway company. Its significance is only apparent as affecting the question of contributory negligence, where that becomes an element in the case. The contrary proposition would seem to involve the absurd conclusion that a railroad company, if it will only employ sufficiently noisy machinery,

thus making itself a nuisance to the public, can thereby relieve itself of the duty of observing any of the precautions now recognized, by railroad companies themselves, as proper and necessary. The soundness of a principle is often best tested by its results: Mayer v. Walter, 64 Pa. 283. Nor is the testimony denying that the whistle was sounded or the bell rung of that purely negative character which, as opposed to affirmative evidence, is entitled to no weight: Quigley v. Canal Co., 142 Pa. 388; nor so clearly overcome by the defendant's witnesses as to justify the court in treating what they testify to as the fact within the rule in Newhard v. R. R. Co., 153 Pa. 417. The truth upon this matter and the resulting conclusion as to the existence or nonexistence of negligence in the defendant's employees depended upon the credibility of witnesses, upon disputed facts, and upon the probable or reasonable inferences from them, and was, therefore, a question for the jury, the correctness of whose determination of it the court is furnished with no legal guide for testing or controlling: Phila. Trust Co. v. R. R. Co., 160 Pa. 590. The verdict of the jury, finding for plaintiff, adds a declaration that the defendant company was negligent. The instructions made a verdict for plaintiff dependent upon a finding, not only that the defendant was negligent, but also that the person with whom the children were riding was not in charge of them with the plaintiff's consent, express or implied. It is not to be presumed, of course, that the jury disregarded this instruction. The finding for the plaintiff, on the contrary, is to be presumed to be a finding for him upon every fact essential to his recovery: Miller v. Bank, 172 Pa. 197. Beyond the statement that the jury find for plaintiff and the sum at which his damages are assessed, it was unnecessary to add anything. Utile per inutile non vitiatur. There is nothing in the reasons assigned in support of the application for a new trial, complaining of the sum allowed by the jury as excessive, the instructions upon the measure of damages having been in exact accord with a point submitted by defendant, which, however, because of its form, could not be affirmed as presented, and was therefore marked declined: Kroegher v. McConway, etc., Co., 149 Pa. 444; Scheuing v. Yard, 88 Pa. 286. This leaves as the only remaining matter to be considered the question of law, whether, under the facts of the case, there can be any recovery.

The action is brought by the father and for his benefit. The children, at the time when they were killed, were riding in his wagon, with one Hiester, who was his servant. The jury has found that Hiester was not authorized by plaintiff to take the children with him. But defendant's contention is that that is altogether immaterial, and that there can be no recovery, if Hiester's negligence contributed to the catastrophe. That it did so, is beyond the possibility of dispute. Does the conclusion insisted upon by defendant follow?

It is conceded on all hands that the master is liable for the negligent acts of his servant, done in the course and within the scope of his employment, though, in the manner of doing his master's business, the servant deviate from his instructions; and it is equally clear that there is no difference, in this respect, between acts of negligence and acts of contributory negligence, or between these and any other civilly wrongful acts. But where a servant, though at the time engaged in his master's service, does such an act, which he was not employed to do, which is not in the line of his duty, nor within the scope of his employment, the master is not responsible: Towanda Coal Co. v. Heeman, 86 Pa. 418. Hence it is plain that a servant may, at the same time, be acting, in respect of the matters committed to his charge, as his master's servant, with the effect of making the master liable for his negligence, and in respect of matters not committed to his charge, as not his master's servant, with the effect of creating, so far as these are concerned, no liability on the part of his master. The difficulty in such a case arises from the dual capacity in which the servant is acting; a difficulty in fact rather than in law. In order to obtain correct results, it must be solved, not ignored, and the case must be treated as if the blended functions had been performed separately. See Lerch v. Bard, 162 Pa. 307. If, in the present case, Hiester had taken plaintiff's team, without permission, for the sole purpose, conceived by himself and not sanctioned by his master, of taking the latter's children for a drive, clearly his negligence in safe-guarding them on the way would not have been imputable to their father: Bard v. Yohn, 26 Pa. 482. But how does the question stand in view of the fact that he took the children on a trip he was directed to make, using the master's team, for the delivery of his flour? There can be no doubt

that Hiester, when he negligently drove upon the railway cross-
ing at which the collision occurred, was acting as plaintiff's
servant in the care and management of his property, and that,
therefore, so far as the injury to the latter is concerned, Hiester's
default is imputable to the plaintiff; and if Hiester also had
delegated to him, by virtue of his general employment or spe-
cially for the time being, the care and custody of the children,
his negligence in the performance of this duty was equally im-
putable to the plaintiff. But Hiester was employed as a miller,
and part of the duties of his employment was the delivery of
flour, using plaintiff's team for that purpose. That employment
and the duties springing from it or reasonably incident to it
did not necessarily involve the taking of plaintiff's children for
a drive, or, as resulting therefrom, their care and custody upon
the highway. So far as the duties of his employment as miller
are concerned, Hiester, in taking the children with him and
guarding them while with him, was acting entirely gratuitously,
not in plaintiff's business nor as his servant, but as a stranger
to him. Of course, all this would be changed if it were proved
that, in taking the children with him, Hiester had the consent,
expressed or implied, of the plaintiff. He would then have
charge of them, in a sense of loco parentis—he would have
been acting, in the care and custody of them, in the line and
within the scope of his employment, as the plaintiff's servant
and agent. But the undisputed facts of the case do not estab-
lish this, the point reserved does not express it, the plaintiff
denies it, the jury was bound to pass upon it, and the ver-
dict negatives it. It follows that the plaintiff, precluded by
Hiester's negligence from recovering in the capacity of owner
for the loss of his property which was in Hiester's charge as
plaintiff's servant, is not precluded in the capacity of father
from suing for the loss of his children who were not in Hiester's
charge as his servant. Whilst no authority running on all fours
with this case has come to my notice, a recognition of the prin-
ciple involved in the proposition laid down is to be found in the
decision of Quinn v. Power, 87 N. Y. 535. Defendant owned
and ran a ferryboat between Hudson and Athens, on opposite
sides of the Hudson river. On a regular trip, the pilot took
on a boatman, without compensation, agreeing to put him on
his boat in a tow passing up the river. Similar acts had been

done before, but not with defendant's knowledge. The ferry-boat was taken out of its regular course and negligently permitted to collide with a canal boat, the collision killing the boatman. It was held that the defendant was liable, because his servant, the pilot, was acting in the course and within the scope of his employment and for the master's interests, though violating his duty in going out of his course. The reasoning of FINCH, J., at pp. 540–542, is instructive and to the point here. Says he:

" The passenger (the boatman) appears to have been an entire stranger. There was no individual or personal motive to induce the pilot to invite him on board or promise to land him at the tow ; what operated to lead to the act was plainly a motive connected with the master's business. The ferry-boat, in previous years, had done a very considerable business in towing to Athens or Hudson boats taken from the tows, or placing them in, for which services compensation was paid. . . . The canal boats arriving in tows were more or less his (defendant's) customers, and their captains or owners were naturally to be treated with consideration as a matter of business. When the pilot saw this boatman standing on the dock and anxious to reach his tow, the pilot did what he thought the master would very probably have done, if present, promised to put the boatman on the tow. In doing so he had no individual or personal purpose of his own, separate from his master's business and interest. On the contrary, it must have been that business and interest, a disposition to gain and keep the good-will of the boatmen as a class, from among whom came the master's customers, which prompted the invitation and the act. The facts disclose no other possible motive, certainly none which was personal to the pilot and entirely independent of his master's business. . . . It is difficult, therefore, to trace in the action of the pilot any separate and independent purpose, disconnected from the master's business. What he did was in the natural line of his employment, might well have been regarded by him as a duty due to his master, and an act which would benefit, rather than injure his business. It was an act within the general scope of that employment; it was the transportation of a passenger; if not across the river, at least partly across ; and none the less so because no compensation or fare was demanded."

In the present case, the taking of the children by Hiester was something entirely disconnected with the master's business, of no possible benefit to it, and unless authorized, expressly or impliedly, by the plaintiff, wholly beyond the scope of Hiester's employment and discretion—in short, the exact opposite of the case just referred to, and within the grounds there recognized as exempting the master from liability. If, however, Hiester's act in taking the children was not done in the plaintiff's business or by his authority, and was not within the scope of the servant's employment or the line of his duties, then he was not, at the time, in charge of the children, or acting, with reference to them, as the plaintiff's servant, and the plaintiff, therefore, would not be affected so far as the injury to them is concerned with Hiester's negligence, under the doctrine apparently deducible from the reasoning in R. R. Co. v. Mahoney, 57 Pa. 187, and Ry. Co. v. Caldwell, 74 Pa. 421. These, it is true, were suits brought in behalf of the injured children, not of the parents. But in the former case it appeared that the child had been taken up by an aunt and that her incaution contributed to the accident; while in the other it was shown that the recklessness of an older companion did so: and in both, just as though the suits had been brought by the parents (compare Ry. Co. v. Schuster, 113 Pa. 412, and Smith v. Ry. Co., 92 Pa. 450), the fact that they had not placed the children in charge of these persons was emphasized as decisive. There does not appear to be much relevancy to this case in the principle applied in Carlisle v. Brisbane, 113 Pa. 544, Finnegan v. Foster Twp., 136 Pa. 135, and similar cases. The suit is not brought by any one representing the children, and therefore the fact that in such a suit Hiester's negligence could not be imputed to them is not controlling. The question is whether it is to be imputed to the father, and the answer to that question, as has been seen, depends, not upon the mere circumstance that Hiester was the plaintiff's driver and as such in charge of the team, but whether he was the plaintiff's driver for the purpose of taking the children for a drive, and thus in respect of them acting as the plaintiff's servant. It is, indeed, suggested that there is no difference, in this case, between plaintiff's children and any " other property " of his; that, if Hiester had, without authority, taken into the wagon any " other property " of the plaintiff, the latter

could not recover for its destruction in view of Hiester's negligence; and that, therefore, he cannot recover for the death of his children.  There is something, to put it mildly, unpleasant about that proposition, and in truth it rests on nothing more serious than a subtle confusion of terms.  A man's children are not his "property" in the sense in which a bag of flour or a horse is.  The right to their labor and earnings is his property, but they are not.  When, therefore, Hiester took the plaintiff's children with him, he did not take plaintiff's property; and hence the supposed analogy, which, at best, might be "as likely to misguide as to guide safely," Overman's App., 88 Pa. 276, fails altogether, rendering a further discussion of this point unnecessary.

It would seem to follow that the question of Hiester's authority to take the children with him was one of the two decisive ones in this case and, being a question of fact under evidence from which opposite conclusions might fairly be drawn, was for the jury; and that the point reserved, not stating the fact of his authority as an undisputed one, because the evidence did not warrant such statement, does not control the case and is therefore insufficient to sustain a judgment contrary to the verdict: Wilde v. Trainor, 59 Pa. 439.

The rules for a new trial and for judgment non obstante veredicto are discharged.

*Errors assigned* were (1–4) refusal of defendant's points, quoting them; (5) in entering judgment for plaintiff on the point reserved.

*Jefferson Snyder*, of *Baer, Snyder & Zieber*, for appellant.—
The injury of which the plaintiff complains was the result, not of any negligence of the defendant's employees, but of the gross negligence of the plaintiff's own servant while doing his master's work: Pittsburg, Fort Wayne & Chicago Ry. Co. v. Dunn, 56 Pa. 280; Haverstick v. Penna. R. Co., 171 Pa. 105.

Hiester, the servant of the plaintiff, was the custodian of the children, with the plaintiff's permission, and the negligence of that custodian and servant must be considered as that of the plaintiff himself: Penna. R. Co. v. Zebe, 33 Pa. 329; R. R. Co. v. Robinson, 44 Pa. 179; Penna. R. Co. v. James, 81* Pa. 194; Smith

v. O'Connor, 48 Pa. 223 ; Glassey v. Hestonville, etc., Ry. Co., 57 Pa. 172; Johnson v. Ry. Co., 160 Pa. 651 ; Bellefontaine Ry. Co. v. Snyder, 24 Ohio, 670.

The injury of which the plaintiff complains being directly and proximately caused by the negligence of his own servant in the course of his employment, the plaintiff cannot recover : Wharton on Negligence, sec. 157 ; Bartonshill Coal Co. v. Reid, 3 Macq. Sc. App. Cas. 266 ; Toledo, etc., Ry. Co. v. Goddard, 25 Ind. 185; Louisville, etc., Ry. Co. v. Stommel, 126 Ind. 35 ; Thorogood v. Bryan, 65 Eng. Com. Law, 114.

*J. H. Jacobs,* of *Jacobs & Keiser,* with him *Rothermel Bros.,* for appellee.—The rule is, not that any negligence on the plaintiff's part will preclude him from recovering, but that, though there has been negligence on the plaintiff's part, still he may recover unless he could by ordinary care have avoided the consequence of the defendant's negligence : Davies v. Mann, 10 Meeson & Welsby, 546; Penna. R. Co. v. Weber, 76 Pa. 157 ; L. V. R. R. Co. v. Hall, 61 Pa. 361; North Penna. R. R. Co. v. Robinson, 44 Pa. 178; Penna. R. Co. v. Zebe, 33 Pa. 329.

Unless it can be shown affirmatively that the parent does place into the hands of the negligent party the custody of his child he cannot be held responsible for the conduct of the custodian.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 15, 1899 :

This action of trespass was brought by the plaintiff to recover damages for the loss he sustained by the untimely death of his two sons—five and seven years of age, respectively—who were killed in September, 1897, by a collision at the " Frush Valley Crossing," a minor station on East Penn Branch of defendant's railroad.  At the time of the accident, the children were in a covered wagon accompanied by Hiester, who, as plaintiff's employee, and with his team, was then engaged in delivering flour and feed to customers of his employer's mill, etc.  He had just delivered flour to one customer about ninety yards from the railroad crossing and was about to deliver feed to another south of the crossing ; and, while driving across the railroad tracks, the wagon was struck by one of defendant's company stock trains, and Hiester and both children were instantly

killed. Without referring in detail to the evidence tending to establish the fact of defendant company's negligence in running its stock train by which plaintiff's children were killed, it is sufficient to say that it presented questions of fact which were necessarily for the exclusive consideration and determination of the jury.

The defendant's four points for charge (in three of which binding instructions against the plaintiff are requested) were rightly refused, and the case was submitted by the learned trial judge in a clear, accurate and fully adequate charge to which no just exception can be taken; and a verdict in plaintiff's favor was rendered by the jury subject to the question of law arising upon the following undisputed facts :

" The evidence in this case showing that Hiester, the person with whom the children killed were riding, was in plaintiff's employ and living with him; that the children's mother was absent when Hiester took them with him ; that while they were at their parent's home, they were in charge of the maid servant, another man and Hiester; that on previous occasions Hiester had taken one or both of the children with him on his trips to deliver flour; that plaintiff knew he had done so and had not forbidden him to do so ; that, in this particular instance, plaintiff did not know the children had gone with Hiester; that, in approaching the railway crossing at which the collision happened, said Hiester neither dismounted nor stopped, looked or listened ; that the approach of the train was audible when the train was more than half a mile away from the crossing ; that, at a distance of a few feet from the track, there was an unobstructed view of the same in the direction of the approaching train, of over 1,000 feet; that said Hiester was familiar with the crossing ; and, it being undisputed that there was a cautionboard on the road approaching the crossing sixty-eight feet from the same,—the question is reserved whether, under these circumstances, there can be a recovery by the plaintiff ? "

After duly considering the question of law thus reserved, and subject to which the verdict in plaintiff's favor was rendered, and also the questions arising under the rule for a new trial, the learned trial judge, in an opinion filed and sent up with the record, discharged the rules for a new trial and for judgment non obstante veredicto ; and afterwards judgment was entered on

the verdict in favor of the plaintiff for the amount found by the jury, with interest from the date of the verdict. Hence, this appeal by the defendant company. The errors assigned are, the refusal of the court below to affirm either of defendant's four points for charge, and also its refusal to enter judgment in favor of defendant on the question of law reserved, non obstante veredicto.

As already remarked, in three of defendant's points (first, third and fourth), binding instructions in its favor were requested. In the second point, for reasons therein stated, the court was requested to " confine the investigation of the jury to the simple question, whether sufficient notice of the approach of the train was given to enable a traveler on the highway to hear it coming, in time to avoid danger if such traveler had performed his duty to stop, look and listen." For reasons given at length in the opinion referred to the second specification cannot be sustained. Nothing can be profitably added to those reasons. It would have been manifest error to have affirmed the points recited in the first and fourth specifications of error. There is nothing in either of them that requires discussion. As to the point recited in the third specification, wherein for reasons therein stated the court was requested to charge that the contributory negligence of Hiester, the driver, must be imputed to the plaintiff, and hence the latter cannot recover, we are clearly of opinion that the learned trial judge rightly refused to affirm it. Under the instructions contained in the learned trial judge's charge, a verdict in plaintiff's favor depended upon a finding, not only that the defendant company was guilty of negligence, but also that Hiester, the person with whom the plaintiff's children were riding, was not in charge of them with his consent, express or implied. By necessary implication, both of these facts must have been found by the jury.

The correctness of the learned trial judge's decision on the question of law reserved is so completely vindicated in his opinion that little, if anything, can be added to what he has so well said therein. Further comment, on either of the questions presented by the assignments of error, is wholly unnecessary.

The judgment is affirmed on the opinion of the court below discharging the rules for a new trial and for judgment in defendant's favor, non obstante veredicto.