# Stewart *v.* DeNoon, Appellant.

*Negligence—Pleading—Statement of claim—Evidence—Explosion—Fire.*

In an action of trespass to recover damages for the burning and loss of a stock of goods where it appears that the plaintiffs and defendants occupied adjoining parts of a building, and the plaintiffs' statement of claim charges that the loss resulted from an explosion due to the defendants' negligence in maintaining a fire in their furnace under a boiler in close proximity to certain inflammable and explosive materials, the defendants are not called upon to prove anything, if it appears from the plaintiffs' own case that the fire had not resulted from the explosion, but that the explosion had followed the fire by at least half an hour.

In such a case, even if the plaintiffs had amended their statement, they could not recover, if the evidence shows that the fire originated in a part of the cellar remote from the inflammable goods, and there is nothing in the evidence to show the origin of the fire.

Argued Nov. 6, 1907. Appeal, No. 7, Oct. T., 1907, by defendants, from judgment of C. P. No. 1, Allegheny Co., March T., 1903, No. 435, on verdict for plaintiffs in case of W. L. Stewart and George W. Stewart, partners as Stewart Brothers, v. Isaac N. DeNoon and Joseph C. DeNoon, partners as DeNoon Brothers. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Trespass to recover damages for loss of stock of goods. Before COLLIER, P. J.

The facts appear by the opinion of the Supreme Court, and by the charge of the court below which was in part as follows:

It is admitted that if the fire did not occur in the cellar or

basement, that is the end of the case.   To determine that, the rule of law is this: That the plaintiffs must satisfy you by the weight of evidence that the fire originated in the cellar, but they are not obliged to satisfy you beyond a reasonable doubt. They are obliged to satisfy you of that by the weight and strength of the evidence on both sides, and if from the weight and strength of the evidence you come to the conclusion that the fire originated in the cellar, then you go to the next question.   But if the weight of the evidence does not satisfy you that it did originate in the cellar, then you find for the defendants without going further.

I will not go over the evidence about that.   The eminent counsel on both sides have called your attention to every little fact bearing upon the question of whether it originated in the cellar, and it is useless for me to go over it again.   As you are the sole judges of the facts, I could be of no service to you in going over something that has been fully gone over before you by counsel.   When you come to examine the question you ask yourselves, did this fire originate in the cellar?   Remember you are not obliged to have an absolute eyewitness, you are not obliged to find it beyond a reasonable doubt, but you are obliged to find that fact by the strength and the weight of the evidence.   With that in mind, you take up the question, and if you find from the weight of evidence that the fire originated in the cellar, then you go to the next and probably the most important question—at any rate, an essential question— and that is, did that fire in the cellar originate from the carelessness and negligence of the defendants?

 *       *       *       *       *       *       *       *

[The burden is upon the plaintiffs to show you that there was a want of that care, that prudent care.   The law requires that, before they can recover, whether it is a big case or a little one.   There again the evidence is somewhat conflicting. You have heard the learned counsel on that.   The last one that addressed you marshalled his facts before you, and the learned counsel on the other side marshalled his facts to show that there was no want of ordinary care.   On the plaintiffs' side they claim that there was a want of ordinary care, and on the other side they say there was not a want of ordinary care. I will not go over that.   You heard all the testimony, how

that cellar was filled with inflammable substances; there was wood alcohol, linseed oil and dryer and other inflammable substances. The linseed oil would drip in places on the floor and sawdust was laid on it, and the plaintiffs say that was left there, not cleaned up and burnt, and the defendants say that it was cleaned up. The plaintiffs say that it was left there from the May before and all the way down to the night of the fire. The plaintiffs allege that no prudent man, knowing that he was right next door to a large warehouse, and knowing or being required to know the danger of these substances and the danger of explosion and fire taking place from the linseed oil and sawdust on the floors, that the defendants did not exercise ordinary care. On the other side they allege that they exercised all the care that business men ought to exercise under the circumstances, and that they took that stuff up and had it actually clean, that is, up to the night of the fire.] [2]

[So that you now have the whole question before you. Although it has taken four and a half days to try it, it is not too long a time, because it is impossible to try this kind of a case in a short time. Still, when you come to determine it, it comes down to the few old principles of law which apply to a little case, as well as a big one, and these are the principles: First, did the fire originate in the basement? If it did not, you find for the defendants. If it did, then you will determine from all this evidence whether there was due care exercised under all these circumstances, knowing the inflammable condition of these goods and everything about it. If they did not exercise ordinary care, and that caused the damage—which of course it would if that was the cause of the fire—then you find for the plaintiffs. The measure of damages is what they lost.] [3]

Plaintiff's points were as follows:

1. If the jury are led to believe from the evidence that the fire which occurred arose in the cellar of the defendants, and was caused by the condition in which it (the cellar) was allowed to get and remain from time to time up to the time of the fire, by allowing, placing or throwing sawdust or other substances on the floor, so that it or they became saturated with oil, varnish or other substances flowing or dripping from the barrels or tanks used by defendants in their business, and thus

became dangerous and likely to produce fire; and the defendants knew or should have known this condition of things, they were guilty of negligence, and plaintiffs are entitled to a verdict in their favor in this case. And in such case it is immaterial how much care was taken in other respects by defendants in the management of their business. *Answer:* Affirmed. [5]

2. The right of plaintiffs to recover depends upon whether defendants exercised due care and caution in regard to the manner in which they permitted the cellar to be used and allowed to get and remain with reference to sawdust, oil, varnish, etc., before and up to the time of the fire; and that the duty of the defendants was to take such care as was reasonably necessary arising from the danger involved in the care and manipulation of inflammable materials. *Answer:* Affirmed. [6]

3. It is immaterial whether the wall was broken by an explosion or by the falling of the floors, provided the fire arose from the negligence of the defendants in their manner of caring for the cellar in respect to that which caused the fire. *Answer:* Affirmed. [7]

Defendant's points were as follows:

4. The testimony of George Porter, the insurance inspector, and W. D. McGill and W. G. McCandless as to the condition of defendants' store on May 29, 1902, is not evidence of its condition on July 29, 1902, and the jury must not consider their testimony. *Answer:* The testimony of these witnesses standing alone would not be sufficient to show the condition of the building on the night of the fire, but the plaintiffs have introduced evidence, if believed by the jury, tending to show that from the date in their testimony, that is, May 29, 1902, from that time down to the fire the premises were kept in a similar condition. Therefore, the point is refused. [4]

5. Under the pleadings and evidence the verdict should be for the defendants. *Answer:* Refused. [1]

Verdict and judgment for plaintiff for $40,800. Defendant appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*George B. Gordon* and *Levi Bird Duff,* with them *Wm. Watson Smith,* for appellants.—The evidence does not support

the pleadings: Wilkinson Mfg. Co. v. Welde, 196 Pa. 508; Good v. Mylin, 8 Pa. 51; Cleaver v. Garner, 133 Pa. 419.

There is no evidence that the defendants' negligence was the cause of the fire: Ford v. Anderson, 139 Pa. 261; Brunner v. Blaisdell Bros., 170 Pa. 25; Hartman v. Penna. R. R. Co., 144 Pa. 345; East End Oil Co. v. Penna. Torpedo Co., 190 Pa. 350; Consulich v. Standard Oil Co., 122 N. Y. 118 (25 N. E. Repr. 259); Cochran v. Dinsmore, 49 N. Y. 249; Phila. & Reading R. R. Co. v. Shertle, 97 Pa. 450.

*L. K. Porter*, with him *S. G. Porter*, for appellees.—That this was not a case for nonsuit or peremptory instructions is clearly established by numerous decisions: Shafer v. Lacock, 168 Pa. 497; Fisher v. Ruch, 12 Pa. Superior Ct. 240; Judson v. Powder Co., 107 Cal. 549 (40 Pac. Repr. 1020); Trexler v. B. &. O. R. R. Co., 28 Pa. Superior Ct. 198; Hartman v. Citizens' Nat. Gas Co., 210 Pa. 21; Penna. R. R. Co. v. Coon, 111 Pa. 430; West Chester & Philadelphia R. R. Co. v. McElwee, 67 Pa. 311; Marsh v. R. R. Co., 206 Pa. 558.

If there is a defect in the statement it is cured by the verdict: Kroegher v. McConway & Torley Co., 149 Pa. 444; Brown v. Gilmore, 92 Pa. 40; Leckey v. Bloser, 24 Pa. 401; Corson v. Hunt & Abrahams, 14 Pa. 510; Robinson v. English, 34 Pa. 324; Smith v. Latour, 18 Pa. 243.

OPINION BY MR. JUSTICE BROWN, March 2, 1908:

At the time the appellees sustained the loss which is the subject of this litigation they were wholesale boot and shoe dealers in the city of Pittsburg, and appellants were engaged in the wholesale paint and glass business. They occupied adjoining parts of a building, separated by a thin terra cotta partition. Appellees' part was known as No. 917 Liberty street, and appellants' as 919. The fire which caused the destruction of appellees' goods occurred about one o'clock on the morning of July 29, 1902, and is alleged in the statement to have resulted from an explosion due to appellants' negligence in storing and handling paints, oils, varnishes, benzine, turpentine and other substances, and in negligently maintaining a fire in a furnace under a boiler in close proximity to these inflammable and explosive materials. The defendants

went into court to meet the charge that an explosion resulting from their negligence had caused the fire. Summoned to answer this specific charge of negligence, they were not required, in arranging their defense, to prepare to meet another. It was sufficient for them to come into court prepared to show that an explosion had not taken place as the result of their negligence. If the negligence charged against them had been established by evidence offered on the part of the plaintiffs, the burden would have been upon them to show that they had not been so negligent, but when the plaintiffs themselves proved that the fire had not resulted from the explosion, but that the explosion had followed the fire by at least a half hour, the defendants were not called upon to prove anything. The case against them, as set out in the statement, had not only not been proved, but was disproved by the plaintiffs, and, when they rested with unamended pleadings, the right of the defendants was to a nonsuit, instead of being forced to go on and make defense to a charge they had not been called upon to answer. " Allegations and proofs must still correspond. The wise and reasonable requirement that a plaintiff must correctly and accurately set forth the material grounds of his complaint has, with us, withstood the reforming hand of the modern pleader, and the defendant yet knows that he need answer only what is charged against him : " Wilkinson Manufacturing Co. v. Welde, 196 Pa. 508.

As long as the case of plaintiffs was being presented the defendants could not know that it would not be made out as pleaded, and only when plaintiffs rested was it known that it had not been so made out, and a nonsuit was promptly asked for, " for the reason that the plaintiffs have not given any evidence of the negligence alleged in the declaration or statement. The evidence does not show that the fire originated from an explosion in the cellar." Plaintiffs made no offer to amend their statement. If it had been amended the case would have been continued on defendants' motion, if they were surprised, to a subsequent term, and in the interval they would have had an opportunity to prepare to meet the new charge of negligence against them. But we need not discuss this further, for even if the statement should be regarded as having been amended, charging the fire as the direct result

of the negligence of the defendants, there is nothing in the evidence from which the jury could have determined how it originated.

It was incumbent upon the plaintiffs to show not only that the fire had started in the cellar, but that it resulted from some negligent act of the defendants. The jury were so properly instructed. They were told that unless they found that the fire had originated in the cellar, their verdict should be in favor of the defendants without further consideration of the case, but that if they should find that it did originate there, and resulted from the negligence or want of proper care on the part of the defendants, the plaintiffs were entitled to recover.

There was sufficient proof for a finding that the fire started in the cellar, but none that it started in that part in which it must have started if the theory of the plaintiffs as to its cause was correct. No direct or positive evidence was offered as to its cause, and the plaintiffs were not required to furnish that kind of proof. In a case like the present it rarely can be furnished, but they were required to submit, in lieu of it, circumstantial evidence from which, if not satisfactorily explained by the defendants, the jury could reasonably conclude that the fire was due to their negligence. That the defendants were careless in allowing the drippings of oil, varnish and other inflammable materials to accumulate in sawdust on the cellar floor was fairly found by the jury, but the only testimony from which they could have found that the fire resulted from this carelessness was that of an expert chemist called by the plaintiffs. With his testimony eliminated there was not a piece of evidence in the case from which the jury could have found what caused the fire. What he said was but a theory as to its origin. His testimony is as follows: " Q. Assuming it to be true that oil, turpentine and varnish were allowed to collect upon the floor of a cellar and, mixed with sawdust from time to time, permitted to remain there for some considerable time without being fully cleaned up and removed, would such a state of facts be likely to result in spontaneous combustion? A. I would say yes. Q. Would such a state of facts as you heard described by the witnesses in this case, where there was a fire in the cellar or live coal un-

der the boiler, such as described by the witnesses—would that likely result in fire ?   A. I would say yes."

The inflammable condition of the cellar was confined to the front part of it.   The dripping oils and the saturated sawdust did not extend to the boiler or fire under it.   Plaintiffs' own witnesses so testified, one of them stating that the barrels or tanks of oil were kept in the front end of the cellar, the one nearest to the boiler being twenty-five feet from it, and yet the fire must have started in the front part of the cellar, between Liberty street and some feet from the boiler, if the expert's theory was correct.   After the fire was over the plaintiffs had access to the building, and one of them went through it frequently, making investigations.   Neither he nor any other witness called by them testified that there had been any fire in the front part of the cellar, though there was much testimony as to where it had burned in other portions of the building. On the theory, upon which alone the plaintiffs would be entitled to recover, that the fire had been caused by the inflammable condition of the front part of the cellar, it was clearly incumbent upon them to show that there had been fire there, but this they failed to do, and when the case went to the jury it was under undisputed and uncontroverted evidence offered by the defendants that there had been no fire in the front part of the cellar.   The evidence was that there was no indication of fire in that part of the cellar ; that the nearest point to Liberty street where there was any indication of fire was at the other end of the boiler, next to the alley ; that not a particle of the cellar had been burned back to the boiler, and an insurance adjuster stated that the stock in the front part of the cellar was absolutely intact, except that it was dirty and splashed with water ; that the empty barrels were intact, and the tanks which contained the drying oils and varnishes were also intact.

The theory of the plaintiffs as to the origin of the fire vanished utterly in the light of undisputed facts, and with its disappearance there was nothing before the jury from which they could have found how the conflagration started.   The defendants are liable only if their negligence caused it, but until its cause is known or fairly found from the evidence it cannot be said to be due to their negligence.   The only conclusion to be

reached from a review of all the evidence is that no one can tell how the fire started, and the finding of the jury that it was due to defendants' negligence must be regarded as a mere guess. If the loss to the plaintiffs was due to the negligence of the defendants, it is their misfortune that they were not able to so prove; on the other hand, if it was not due to the negligence of the defendants, it is well that the law will not permit them to be made liable for the consequences of a mere guess that it was. The first assignment of error is sustained, the judgment is reversed and judgment is now entered for defendants.