## Decker v. Lackawanna & Wyoming Valley Railroad Company, Appellant.

*Railroads—Carriers—Passengers—False arrest—Conductor.*

1. In an action by a passenger against a railroad company to recover damages for false arrest, there is no case for the jury where the evidence shows that a conductor of a passenger train of defendant telephoned to the dispatcher at the terminal ahead, that he had a disorderly crowd aboard, that he was informed by the dispatcher that the police would be at the terminal station, but were not to arrest anyone for anything that occurred on the train, that the police were so instructed, that the conductor when he alighted from the train at the terminal was asked by an officer to point out the crowd that had been disorderly, that the conductor did as requested, and that in consequence the plaintiff was arrested.

2. In such a case the company is not liable because the evidence did not show that the conductor actually participated in, or caused the arrest of the plaintiff; but even if it should be conceded that the conductor caused the arrest still the company was not liable, because the conductor acted beyond the scope of his authority.

Argued March 3, 1909. Appeal, No. 10, March T., 1909, by defendant, from judgment of C. P. Lackawanna Co., May T., 1906, No. 851, on verdict for plaintiff in case of Harry P. Decker v. Lackawanna & Wyoming Valley Railroad Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for false arrest. Before NEW-COMB, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $191.80.

*Error assigned* among others was in refusing binding instructions for defendant.

*W. J. Torrey,* of *Welles & Torrey,* for appellant.—If a person merely communicates facts to the police and they act on their own responsibility, the defendant is not liable for false arrest: Brown v. Chadsey, 39 Barbour, 253.

The conductor acted beyond the scope of his authority: Faust v. Ry. Co., 191 Pa. 420; McGilvray v. Ry. Co., 41 N. E. Repr. 116; Towanda Coal Co. v. Heeman, 86 Pa. 418; Cincinnati, etc., Ry. Co. v. Carper, 112 Indiana, 26 (13 N. E. Repr. 122); Lezinsky v. Metropolitan Street Railway Co., 88 Fed. Repr. 437; Laffitte v. New Orleans City, etc., Ry. Co., 12 L. R. A. 337; Cunningham v. Seattle Electric Railroad & Power Co., 28 Pac. Repr. 745; Central Railroad Co. v. Brewer, 27 L. R. A. 63; Grayson v. St. Louis Transit Co., 100 Mo. App. 60 (71 S. W. Repr. 730).

*Edward W. Thayer*, with him *Charles E. Daniels*, for appellee.—Taken as a whole, this presents the case of a man telephoning to the police of a disturbance in his house and requesting the presence of an officer, and upon the appearance of the officer and a request for information pointing out the offender. If that is not participation in the arrest, it is difficult to understand how one can participate in an illegal arrest by an officer: Burk v. Howley, 179 Pa. 539; Duggan v. R. R. Co., 159 Pa. 248; Ry. Co. v. Hinds, 53 Pa. 512.

The conductor was acting within the scope of his employment: McClung v. Dearborne, 134 Pa. 396; Duggan v. R. R. Co., 159 Pa. 248; McFarlan v. R. R. Co., 199 Pa. 408; Schimpf v. Harris, 185 Pa. 46; Gillingham v. R. R. Co., 14 L. A. R. 798; Palmeri v. R. R. Co., 16 L. R. A. 136.

OPINION BY MORRISON, J., April 12, 1909:

On May 8, 1906, the plaintiff purchased a ticket at Wilkes-Barre for Scranton and boarded a train of the defendant company for the latter place, which is the terminal of the road. It is alleged that after leaving Wilkes-Barre, the plaintiff and his companions were noisy, offensive and flourishing revolvers. This according to the witnesses of the defendant, though the plaintiff and his witnesses contradicted these averments. When the train arrived at Rocky Glen, which is about fifteen minutes' ride from Scranton, the conductor left the train and telephoned to Mr. Page, the dispatcher at Scranton, that he had a disorderly crowd aboard, that they were flourishing

revolvers and that he wanted instructions what to do under the circumstances. The dispatcher told him to stop at Laurel Junction, a few hundred yards below the Scranton station, for instructions, when he arrived there. The conductor then boarded his train and proceded to Laurel Junction. In the meantime, Page, the dispatcher, telephoned to Mr. Murray, the trainmaster, who instructed Page to telephone the police to be on hand when the car arrived to prevent any disturbance there, but not to arrest the crowd for anything they had done on the train. Mr. Page caused notice of this fact to be given to the conductor at Laurel Junction. Mr. Page also called up the police station and requested the police to be present when the train arrived at Scranton. When the train drew into the Scranton station, the passengers all alighted and the trip was apparently over and the conductor started into the station to deliver his tickets, when he was met by a police officer who asked him where the men were who had caused the disturbance. He pointed out the crowd who were still at the station and had not yet reached the street. The officer then walked over to them and halted them. Under conflicting evidence, the jury found that the plaintiff was then arrested for disorderly conduct on the defendant's train and carrying concealed weapons. This was an arrest for something not happening in the presence of the police officer. The plaintiff, with his companions, were led into the waiting room of defendant's station by the police officers, where a controversy ensued and as a result the plaintiff and his companions were taken to the police station. The following morning the plaintiff was arraigned in the police court where he had a hearing and was duly convicted and fined for being drunk, disorderly and carrying concealed weapons. We understand it to be conceded that this conviction and sentence thereon had not been reversed at the time of the trial of this case. The plaintiff contended that he was not drunk and disorderly on the train nor at the station. This suit was brought to recover damages from the defendant corporation for a false arrest on the theory that it was brought about by the action of the conductor of the train. The learned court submitted the case to

the jury in a fair and impartial charge, if the evidence warranted submitting it to them at all.

In our opinion, the pivotal questions for consideration are two, viz.: 1. Was there sufficient evidence in the case from which the conclusion can be reasonably drawn that the defendant's conductor actively participated in the arrest of the plaintiff? 2. If he did, was he at the time acting within the scope of his authority so as to bind the defendant corporation?

The assignments of error raise the questions, 1st, of the refusal of the court to give a binding instruction; 2d, refusal to enter judgment for the defendant on the point reserved, and 3d, refusal to enter judgment for the defendant non obstante veredicto and in entering judgment on the verdict in favor of the plaintiff.

A careful examination of the evidence leads us to the conclusion that the learned court erred in permitting the jury to find that the defendant's conductor actively participated in or caused the arrest of the plaintiff. The evidence upon this question at most only shows that the conductor inquired from Rocky Glen of his superior officer for instructions as to what he should do about the disorderly crowd; that he was instructed to stop at Laurel Junction, which he did, and received instructions not to arrest the crowd for anything they had done on the train. It further appears clearly that the police were sent to the station at Scranton instructed not to arrest any of the crowd but to preserve order there. Taking the most favorable view of the evidence for the plaintiff, it only shows that the conductor pointed out the plaintiff and his companions on inquiry being made by the police, and we fail to find in the evidence anything indicating that the conductor aided, directed or participated in the arrest of the plaintiff. When the police officers asked him to designate the disorderly crowd it is difficult to see that he could have done any less than he did.

The plaintiff's declaration alleges that he was arrested at the instigation of and on information received from employees of the defendant company. We do not think the evidence sustains this averment and if we are right in this, then the court ought not to have submitted the case to the jury, because the

theory on which the plaintiff recovered was that the conductor instigated the arrest. The undisputed evidence shows that the conductor was instructed not to have the plaintiff arrested for anything that happened on the train and so were the policemen instructed not to arrest any of the crowd for what had happened on the train. In the absence of clear evidence to the contrary, it ought to be presumed that the conductor would not disobey positive instructions from his superior officer. So it ought also to be presumed that the police officers did not disobey instructions and arrest the plaintiff for something happening on the train and which they did not see or hear. The theory of the defendant at the trial was that the plaintiff was arrested for what took place at the Scranton station in the presence of the police. Now the fact that the plaintiff was taken by the police, without a warrant, before the magistrate and convicted and fined for being drunk, disorderly and carrying concealed weapons, very strongly supports the defendant's contention that the arrest was not made for what happened on the train and that it was not instigated by the conductor.

But if we are wrong in this view and the conductor did instigate the arrest for what happened on the train, was he at the time acting within the scope of his authority so as to bind the defendant corporation? The evidence clearly shows that the train had arrived at the Scranton station and the passengers had all alighted and the conductor had left his train before he pointed out the plaintiff as one of the disorderly persons. It is difficult for us to see on what theory the defendant is to be bound by what the conductor did by way of identifying the plaintiff to the policemen, after he had finished his trip and had left his train. It is a conceded fact that the yard and trains and railroad property were not in the charge of the conductor after he had completed his trip. But in addition to the fact that the conductor, at the time he pointed out the plaintiff, was not acting within the scope of his authority, we have the uncontradicted evidence that he had been notified by his superior officer not to cause the arrest of the plaintiff for anything that had happened on the train. It may be true that while acting within the apparent scope of his authority, such

an instruction, if disobeyed by the conductor, would not relieve the defendant from the consequences of his unlawful act. But when a conductor has brought his train to the station and has seen his passengers all alight and leave the train and he himself has left it, we do not think he was acting within the scope of his authority, even if he did instigate the plaintiff's arrest.

"The authority of a conductor ordinarily extends to the control of the movements of his train and to the immediate direction of the movements of the employees engaged in operating the train. He is to a great extent the representative of the company in such dealings as it may be necessary for the passengers to have with it while en route:" 1 Elliott on Railroads, p. 424, sec. 302.

In Faust v. Ry. Co., 191 Pa. 420, Judge ENDLICH, who tried the case in the court below and was affirmed by the Supreme Court, said: "But where a servant, though at the time engaged in his master's service, does such an act, which he was not employed to do, which is not in the line of his duty, nor within the scope of his employment, the master is not responsible: Towanda Coal Co. v. Heeman, 86 Pa. 418. Hence it is plain that a servant may, at the same time, be acting, in respect of the matters committed to his charge, as his master's servant, with the effect of making the master liable for his negligence, and in respect of matters not connected with his charge, as not his master's servant, with the effect of creating, so far as these are concerned, no liability on the part of his master."

In Towanda Coal Co. v. Heeman, 86 Pa. 418 , it was held as stated in the syllabus: "Where there was no evidence that the servant was acting in the line of his duty and within the scope of his employment, it was error to submit to the jury the question whether his wrongful act was or was not done in the exercise of a duly delegated authority." Upon this question see Connor v. Penna. R. R. Co., 24 Pa. Superior Ct. 241, and authorities therein cited.

In the case of McGilvray v. West End St. Ry. Co., 41 N. E. Repr. 116 (Mass., 1895), the facts were not unlike those in the present case. A passenger had taken a street car and had paid

his fare, and the street car, instead of proceeding on its way to take the passenger to his destination, stopped at a car barn; the conductor left his car and the passenger (plaintiff) demurred because the car did not proceed on its way. With one foot on the step of the car barn and one on the street, the plaintiff irritated the conductor by his objections until the conductor assaulted him. He sued the defendant company for damages for assault, and the court granted a nonsuit, on the theory that the conductor was not acting within the scope of his employment.

In Cincinnati, etc., Ry. Co. v. Carper, 112 Ind. 26 (s. c., 2 Am. St. Rep. 114), it was held that a railway company was not liable for the acts of its conductor after he had provided a safe alighting place for the passengers, in the absence of any evidence that he was acting within the scope of his authority. To the same effect are the following: Lezinsky v. Metropolitan St. Ry. Co.; 88 Fed. Repr. 437; Lafitte v. New Orleans City & Lake R. Co., 12 L. R. A. 337; Cunningham v. Seattle Elec. R. R., etc., Co., 28 Pac. Repr. 745; Central R. R. Co. v. Brewer, 27 L. R. A. 63; Grayson v. St. Louis Transit Co., 100 Mo. App. 60 (71 S. W. Repr. 730).

The learned court below expressed grave doubt whether the act of the conductor was the act of the defendant company. The court, however, found that there was evidence introduced by the defendant which would justify the verdict of the jury. We do not so understand the evidence. We understand the instructions from the conductor's superiors to be clear and uncontradicted, that the conductor should not arrest the plaintiff for any misconduct on the train, and the whole evidence on this question is quite persuasive that the plaintiff was arrested for an offense committed in the presence of the police.

The judgment is reversed and judgment is here entered in favor of the defendant non obstante veredicto.