# Perry, Appellant, *v.* Pennsylvania Railroad Company. Perry *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Carriers—Passenger—Ejection of passenger—Dining-car waiter—False arrest.*

1. It is a reasonable regulation of a railroad company that passengers shall not ride in a dining car during such portions of the route as the car is not in actual service for meals.

2. Where a waiter in a dining car is discharged en route he may ride in a coach upon payment of his fare to the end of his run, but he has no right to insist upon riding in the dining car after the car has been closed to passengers generally at a station; and if he defiantly persists in doing so after he has received sufficient notice to change his clothing, creates a disturbance, and delays the train he may be put off the car with such force as is necessary by the police at the direction of the company's employees, and if he persists in his disorder on the platform in the presence of the police, and the police arrest him upon a charge of disorderly conduct, the company will not be liable either for his ejection from the car, or his subsequent arrest.

3. If it be assumed in such a case that the officers of the railroad company made the police officers of the city the servants of the company, for whose acts the company would be liable by calling them to remove the plaintiff from the car, still the plaintiff would not be entitled to go to the jury upon this question, if it appeared that a conviction for disorderly conduct followed, and that this conviction was unappealed from and unreversed.

Argued Oct. 20, 1909. Appeals, Nos. 77 and 86, Oct. T., 1909, by plaintiff and defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1905, No. 2,155, on verdict for plaintiff in case of Robert D. Perry v. Pennsylvania Railroad Com-

## 592 PERRY, Appellant, v. PENNSYLVANIA R. R. CO.

pany.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Reversed.

Trespass to recover damages for ejection from train and for false arrest.  Before McMICHAEL, P. J. ·

The facts are stated in the opinion of the Superior Court.

The trial judge charged as follows:

[I think the law, as settled by the highest courts of this state, as applied to this case, is that this defendant, Perry, was not a passenger.] [2] The reasons for that are given in the decisions of the Supreme Court.  I might generalize them, but I cannot give them as clearly as the judges who write the opinions of the Supreme Court, but perhaps I can make them clear to you.

A common carrier, a railroad company, is bound to receive a passenger who behaves himself and goes to the office of the company and buys a ticket, or if he is too late to get his ticket and is allowed through the gate and gets on a coach or car of the company, an ordinary passenger car, and tenders his fare, subject to such reasonable regulations as the railroad has a right to make, as to the payment temporarily of some additional fare, the company is bound to receive the fare, and he becomes a passenger.  We all know that.  But there are some cases in which it is not quite so easy to determine the rights; and this is one of them.  Perhaps it is a new case in this commonwealth.  That is, taking the question of law, when a person is in a dining car, not at mealtime but at some other time, and says to the conductor, if it happened to have been a conductor, "I am going to ride to New York and I am ready to pay my fare," he has not a right to do that.  I have come to that conclusion.  Neither you nor I nor anybody has a right to do that.  Our business is to get into a passenger coach—I am not going to say anything about Pullmans, for why complicate it?—but to get into a passenger coach and there pay our fare and become a passenger.  [If by mistake even one of the traveling public gets in a dining car not at mealtime, if there is no evidence that a meal was being served, even though he was ready

to pay his fare, the company, I hold, is not bound to receive him, and he is not a passenger.] [2]

[The plaintiff cannot recover for the false arrest or for anything that happened on the false arrest, because he was convicted. That is, the magistrate imposed a sentence, according to the testimony of the clerk of the magistrate, for disorderly conduct; and that, under the cases, disposes of his action for false arrest or for false imprisonment. It is not necessary to go into the law about that. The man may have been wise or he may have been foolish to pay his $11.50 and acquiesce in the magistrate's determination of the case, but the magistrate who had a right to determine it, determined it adversely, and I could not allow you to take into consideration that arrest at all.] [4]

Now let us look at the facts of the case. Not all the facts; I am not going over the evidence, but I want to call your attention to a few matters, and I shall call your attention chiefly to the testimony of the plaintiff about them. The plaintiff, as you know, had a controversy with his superior who was in charge of the car. As to the merits of that controversy I do not express any opinion, and I do not think it has anything to do with the rights of the plaintiff or the liability of the railroad company. But what happened afterwards, I think, does bear on the question, when you look at it from the point of view of determining the facts as to what happened at Broad street station. After their controversy the plaintiff, Perry, said— this is right in the beginning of his testimony when he was telling his own story and was giving his account of the occurrence—"With that, he ordered me to get my things and get out of the car and go up in the coach and ride." Now I consider that a very important piece of testimony for you to consider. He is telling his own story, and he is telling you what the headman, Cooper, said to him after this occurrence, and it has a very large bearing on the question whether he was told to get off the dining car or get off the train. He says himself, "With that, he ordered me to get my things and get out of the car and go up in the coach and ride. I said, 'All right, I am not going out. If the train conductor says go out, all right, I will

go out.' I said, 'I have no ticket to ride in the coach. The dining car is the car I am supposed to make my trip in.'" Then he says the train conductor came in later, "and the train conductor didn't say anything to me, nor did he ask me any questions." That is the way the thing stood for a little while, and then he said—you remember he described Cooper as sitting at a table getting lunch—"I went up to him. He said, 'Perry, you are going to get off at Broad street.' I said, 'I don't think so.'" Now according to him, there was some other conversation at Broad street. That is, Perry, the plaintiff, according to his own testimony, was told that he was to get off that car and get in another coach. That is his own testimony. [And when he came to Broad street, what happened? The plaintiff says: ". . . . someone in uniform with a cap on. Mr. Hobbs asked for Perry. I answered to my name. I said, 'I am Perry.' He said, 'Perry, you are going to get off at Broad street.' I said, 'Beg pardon, Mr. Hobbs, I am not.' I said, 'My destination is Jersey City. I am willing to pay my fare to Jersey City.'" And he said, "I showed my money, I said, 'I am willing to pay my fare.'" Then the company, or the officer of the company, Mr. Hobbs "ordered me off, and I asked him if he had any place for me to dress or if he expected me to dress on the platform. I said if he had a drawing-room I would be willing to dress in there, otherwise I would dress in the pantry as is the custom in the car. I pulled down the shade, and in the meanwhile undertook to undress myself, not with the intention of getting off but with the intention of riding on that train to Jersey City, which I felt entitled to do for my money and my behavior, and I didn't see why I should be taken off." Now that is important testimony to consider. Perry said when he was told to get off the car, "I am going to Jersey City." When he was told to get dressed, he said, "I was getting dressed, not with the intention of getting off; I intended to go to Jersey City." I have come to the conclusion as a judge, looking at the law, that Perry was wrong about that; he made a mistake about his rights. He, nor you, nor I had a right to do that, and therefore if he intended to assert those rights, though I do not profess to be infallible—I may be entirely wrong—I am only

giving you my interpretation of the law—but I think it is the law that he had no right then to insist on staying in that car after he was told to get off the car.] [5] Then came a history of the controversy and of what happened later. Then later on in Perry's testimony he was asked:·

"Q. You were told to change your clothing? A. I was. Q. You did not do it, did you? A. I did; I was changing my clothes. Q. And you would not hurry? A. I didn't know why I should hurry. Q. Wasn't the train about to start? A. Well, it had ten minutes to stop there. Q. You said you would take your time? A. I did not. I intended to take my time just the same."

He says, "I did not say that, but I intended to take my time just the same."

Now, gentlemen, that is the situation as it presents itself from the plaintiff's testimony—that the man said he intended to stay there and he relied on his behavior and on his intention to pay his fare and to stay there. And in that light you must consider the testimony.

[Now, to repeat a little, in order that I may be understood, he had no right there. His duty was to get off, and his duty was if he wished to go to Jersey City, to get off and get in another car and pay his fare, and then he would probably have been entitled as a passenger to ride there. But having been told to get off the dining car and to get off at Broad street, and having refused to do that, and having declared that his intention was to stay there until he got to Jersey City, those are the facts of the situation of the plaintiff. Now, then, the defendant had a right, first, to ask him to go or order him to go, and second, if he did not go, to put him off, and to use sufficient force to put him off. They were bound to do that, however, with as little injury to the plaintiff, physically and mentally, as possible, or as was consistent with the occasion. And whether they did that or not, I think, is a question for you under the evidence. You will consider the facts. I have called your attention to the plaintiff's story. The plaintiff has been corroborated, you may think, by two or more witnesses in the general details of the story. This position was one that he as-

sumed himself all through. I do not think I am stating the position differently, except more briefly. It was the plaintiff's own position. I think now, after reflection, that the man was mistaken as to his right; that he had not the right that he thought he had to stay in that car to Jersey City if he paid his fare.] [6]

Verdict and judgment for plaintiff for $100. Both plaintiff and defendant appealed.

*Errors assigned* by plaintiff were (2-6) above instructions, quoting them.

*Errors assigned* by defendant was refusal of binding instructions for defendant.

*Lincoln L. Eyre*, for Robert D. Perry.—We submit that the principle of law upon which the rights of the plaintiff in this case are to be determined is that which is repeatedly laid down, as in Railway Co. v. Rosenzweig, 113 Pa. 519. See also Ham v. Canal Co., 142 Pa. 617; Hall v. Ry. Co., 14 W. N. C. 242; McNulty v. R. R. Co., 182 Pa. 479.

It has been repeatedly held that neither an acquittal nor a conviction is conclusive of the question of probable cause or want of probable cause: Auer v. Mauser, 6 Pa. Superior Ct. 618; Graham v. Noble, 13 S. & R. 233; Grohmann v. Kirschman, 168 Pa. 189; Cooper v. Hart, 147 Pa. 594.

*John Hampton Barnes*, for the Pennsylvania Railroad Company.—The plaintiff was an employee, and while on the car was not a passenger: Railroad Co. v. Price, 96 Pa. 256; Foreman v. Penna. R. R. Co., 195 Pa. 499; Bricker v. Phila. & Reading R. R. Co., 132 Pa. 1.

The court charged rightly that he was not and could not be a passenger, under the evidence in the case. Therefore no right of action could vest in him by reason of any act of the defendant towards him as a passenger: Wilkinson Mfg. Co. v. Welde, 196 Pa. 508; Mahoney v. Transit Co., 214 Pa. 180; Mahoney v. Steel Co., 217 Pa. 20; Stewart v. DeNoon, 220 Pa. 154; Kough v. Penna. R. R. Co., 222 Pa. 175.

The rule seems to be unquestioned in this state that in order to sustain an action for malicious prosecution or false arrest, there must have been a termination of a previous criminal action favorable to the plaintiff: Reiter v. Brown, 21 P. L. J. 131; McAnlis v. Patterson, 30 P. L. J. 308; Harrison v. Clarke, 4 Kulp, 383; Moore v. Murphy, 34 P. L. J. 407; Kirkpatrick v. Kirkpatrick, 39 Pa. 288.

OPINION BY PORTER, J., March 3, 1910:

We have in this case appeals from the judgment of the court below by both plaintiff and defendant, and, as the conclusion at which we have arrived requires the entry of but one judgment, both appeals may be considered in the same opinion. The questions raised by the specifications of error in the appeal by the plaintiff, at No. 86, October Term, 1909, of this court, will first be considered. The plaintiff in this action of trespass filed a statement averring that, "On the fifth day of May, 1905, he was lawfully and peaceably in and upon a certain passenger train of the defendant company at about four o'clock in the afternoon of said day while the train was standing at the station of the defendant company in Philadelphia, known as the Broad street station, the plaintiff intending to be and become a passenger of the defendant company upon said train from the City of Philadelphia to the city of Jersey City in the State of New Jersey, for which point said train was destined and about to leave on said day and hour." The statement further averred that while the plaintiff was "conducting himself in a peaceable, orderly and lawful manner, he was without any cause or justification whatever on the part of the defendant company, seized with force and violence by several of the employees of the defendant company acting under the authority and instructions of the defendant company and in its behalf, and against his will and consent forcibly taken and ejected from the said train and from said Broad street station, and then and there arrested and placed in charge of a police officer of the city of Philadelphia, without any warrant or other authority for so doing and without his having committed any act or offense justifying an arrest, and was forcibly taken

to a station house in the city of Philadelphia, . . . . still under the authority and instructions of the defendant company or its servants or employees and then and there unlawfully imprisoned in said station house at the instance of the defendant company . . . . until about nine o'clock in the morning of the following day, at which time the plaintiff was released from said imprisonment." The only wrong with which the statement charged the defendant was its failure to discharge the duty which it owed to him as a passenger upon its train, its act in wrongfully expelling him from the train and in causing his subsequent unlawful arrest and detention.

The plaintiff produced at the trial evidence, including his own testimony, to the following effect: The plaintiff was employed by the defendant company as a waiter upon a dining car, used in connection with its express train service, which upon the day in question was attached to a train leaving Washington City about noon. Luncheon was being served on the dining car when the train left Baltimore, and a number of passengers had come into the car for the purpose of partaking of that meal. Before the train reached the bridge across the Susquehanna river the conductor of the dining car spoke to plaintiff and asked him if he had not heard a passenger making a request of him for some service as he was passing through the car. The plaintiff replied that he had not, and the conductor said that the passenger had spoken loud enough for him to hear. The plaintiff made some retort, an altercation followed, and the conductor told the plaintiff that he was discharged, that he must take off his waiter's uniform, change his clothing, get his things and get out of the car and go up and ride in one of the coaches. The plaintiff said, "All right, I'm not going out. . . . I have no ticket to ride in the coach. This dining car is the car I'm supposed to make my trip in." When the train reached Wilmington the service of luncheon had been finished, the passengers had all left the car, returning to their proper places in the train, and the conductor, the waiters and the plaintiff were eating their luncheon in the car. At Wilmington, Delaware, the conductor of the dining car said to the plaintiff, "Perry, you are going to get off at Broad

street." The plaintiff replied, "I don't think so." The plaintiff made no effort to change his waiter's uniform for his citizen's or street clothes, after he had been thus twice notified that he must leave the car. The train arrived at Philadelphia about four o'clock and was scheduled to remain at Broad street station only ten minutes, which this plaintiff knew. He did not upon the arrival of the train at Broad street proceed to change his clothing or make any preparation to leave the car. After the train had arrived at Broad street station Mr. Hobbs, the officer in charge of the dining-car service of that division of the road, in company with the station master of Broad street station, and two police officers of the city of Philadelphia came down the platform to the car, having been notified by a telegram from the conductor. The police officers remained on the platform while the station master and Hobbs entered the dining car, inquired for the plaintiff and upon finding him, Hobbs, who was the head of the dining-car service of the defendant company in which plaintiff had until that day been employed, said, "Perry, you are going to get off at Broad street." The plaintiff replied "Beg pardon, Mr. Hobbs, I'm not. My destination is Jersey City. I am willing to pay my fare to Jersey City." The time for the departure of the train had arrived, and the station master notified Hobbs that he could hold the train no longer. Hobbs then said to plaintiff, "If you don't get out now we will have to take you out." The plaintiff, having held the train thus until it was overdue, then started to undress, for the alleged purpose of changing his clothes. What his purpose was was shown by his answer to a question on cross-examination: "Q. And you said you would take your time? A. I did not. I intended to take my time just the same. Q. And they took you out? A. Yes, sir." True it is that the plaintiff testified that during this colloquy he said to Mr. Hobbs that he was willing to pay his fare to Jersey City, and showed his money. But the manner in which he intended to insist upon being transported to Jersey City was clearly revealed by his own testimony: "I said I was privileged to ride where I pleased for my money and behavior anywhere I wanted on that train. And I wanted to get prop-

erly dressed. Q. You refused to leave the car? A. I refused to leave the car. For my money and my behavior I claimed my right, with equal right to you and any other member to ride to Jersey City. Q. You were claiming the right to remain in that car as a passenger. Is that your position now? A. That is my claim, for my money and my behavior. Q. Then your position is that you claimed the right to stay in that car as a passenger? A. Yes, sir. I refused to obey Mr. Hobbs or any other person, for my money or my behavior. Q. You were taken to the city police station by a city police officer, and there you were locked up? A. Yes, sir." All the foregoing facts appear from the testimony of this plaintiff. The uncontradicted evidence was that this dining car was then out of service, that it would not be open for passengers between Philadelphia and Jersey City; it was being carried by the train to that place in order that it might be attached to some other train. The plaintiff had kept this express train, upon which there were many scores of through passengers waiting until at least five minutes after the time when it ought to have left the station. The plaintiff was asserting the right to ride to Jersey City, as a passenger in a car, which, under the uncontradicted evidence in the case, was not to be open to passengers during the journey. The train master finally told Hobbs that he could hold the train no longer, whereupon Hobbs told the two police officers of the city of Philadelphia to take the plaintiff off the car; the police officers then entered the car and took the plaintiff out on to the platform, where the plaintiff, according to his own testimony, finding himself free, ran back into the car; the police officers again went into the car and this time, after removing the plaintiff from the car they took him to the police station house on Fifteenth street and there preferred against him a charge of disorderly conduct. These were the facts disclosed by the testimony of this plaintiff and the witnesses whom he called. The testimony produced on behalf of the defendant indicated that the plaintiff was absolutely defiant in refusing to leave the car, that after he had partly changed his clothes, and had on the trousers of his citizen's suit, when the officers were removing him from the

car, he deliberately unbuttoned his clothing, slipped his suspenders from his shoulders and dropped his trousers, for the purpose of hindering them in removing him from the car. He struck one of the officers and kicked at the other, and in a loud voice indulged in profane language. The defendant also produced the record of the proceedings of the magistrate, under the charge of disorderly conduct, and called witnesses as to what occurred at the hearing of that charge. This evidence established that the magistrate had adjudged the plaintiff guilty of disorderly conduct and had fined him $10.00 and costs, which he had paid, and that that conviction remained unappealed from and the plaintiff had taken no steps to reverse it.

The statement contained no averment that the defendant had made default in any duty which it owed to the plaintiff as an employee. The able counsel representing the plaintiff concedes that the plaintiff accepted his discharge and that the question of the right of the defendant to discharge him in the manner in which it was done cannot here be considered. We have, therefore, only to deal with his rights as a passenger, and the question whether he ever became a passenger. The learned judge of the court below charged the jury that the plaintiff was not a passenger; that the defendant company had a right to remove him from the dining car, under the circumstances, using no more force than was necessary; that, under the evidence presented, the plaintiff could not recover of the defendant damages for his detention upon the charge of disorderly conduct, made by the police officer of the city, after plaintiff had been removed from the train; but left to the jury the question whether undue force had been used in removing the plaintiff from the train, and, if upon that point they found in favor of the plaintiff, instructed them as to the measure of damages. The specifications of error filed by the plaintiff all involve but two questions: (1) The right of the defendant, under the facts by the plaintiff admitted to be true, to eject the plaintiff from the dining car in a proper manner, and (2) the right of the plaintiff to recover of the defendant, under the evidence, damages for his alleged subsequent unlaw-

ful arrest and imprisonment. We find it earnestly argued in the brief for plaintiff that, the plaintiff having ceased to be an employee of the company, he had a right to tender his fare and ride as a passenger upon the train to Jersey City; that upon tender of his fare the company was bound to carry him as a passenger upon the train. The evidence disclosed nothing which would have justified the defendant company in refusing to carry the plaintiff as a passenger if he had tendered his fare and offered himself as a passenger to be carried in any of the coaches of the train designated for the carriage of passengers, upon the same terms and conditions that other passengers were carried on that train. There was nothing in the evidence which would have justified the defendant in refusing to receive him as a passenger upon the ground that it would have been unsafe to permit him to ride in coaches where other passengers were carried. The difficulty with the position of the plaintiff is that he did not propose to be carried in the coaches in which other passengers were carried. He did not assert the right to be carried as passengers generally were carried. He demanded that as a general passenger, he be carried in the dining car, to which passengers during that particular part of the journey were not to be admitted, and to which they were generally only admitted for the purpose of taking meals while upon their journey. When the train was at the bridge crossing the Susquehanna river the conductor of the dining car discharged the plaintiff, and it is conceded that he had the authority to do so. He then told the plaintiff to change his clothing and go into one of the passenger coaches and he would be there carried to Philadelphia; this the plaintiff refused to do, and remained in the dining car. When the train was at Wilmington the plaintiff was again notified that he would be required to leave the car at Broad street station, Philadelphia. He again declared that he would not do so; if he had desired to change his clothing before he left the car there was then ample time for him to do so before the train reached Broad street station. When the train arrived at Broad street station and the officers of the defendant company notified the plaintiff that he must leave

the dining car, he again defiantly refused to do so. Conceding that it be true that he then offered to pay the amount of fare which passengers generally were required to pay for transportation to Jersey City, as he testified, it is clear from his own testimony that his declared purpose was to remain in the dining car and not go into one of the coaches provided for the carriage of passengers. He made no suggestion to the employees of the defendant company that he would go into a passenger coach, nor is there anything in his testimony from which his willingness to go into a passenger coach could be inferred. He defied the officers whose duty it was to enforce the regulations applicable to all passengers, and persisted in remaining in the dining car. There is nothing in his testimony which would warrant a finding that he indicated to the servants of the defendant company that he was willing to be carried as a passenger in any of the cars provided for the carriage of passengers upon that journey, and, entirely apart from the question of notice to the servants of the defendant, there was nothing from which a jury should have been permitted to infer that the plaintiff was willing to be carried as a passenger in the place upon the train provided for such transportation. Even at the time of the trial the plaintiff still persisted in the assertion that he had the right, upon payment of the amount of the passenger fare from Philadelphia to Jersey City, "to remain in that car as a passenger." He admitted that, when at Broad street station, speaking to the servants of the defendant company, "I said I was privileged to ride where I pleased for my money and behavior anywhere I wanted on that train."

The safety of passengers upon railroad trains necessarily requires that the manner in which the train shall be made up shall be under the exclusive control and regulation of the carrier. The means adopted for the transportation of passengers upon railroads make it necessary that the trains be made up of distinct units. The engine which furnishes the motive power is placed under the control of the engineer, who must be free from the interference of irresponsible parties, the cars carrying the mail must be in the exclusive possession of the

representatives of the government, the baggage of passengers is carried in special cars provided for that purpose to which only designated employees of the company are admitted, certain cars are designated for the carriage of general passengers, and to such cars all proper persons who pay the established rates have a right to be admitted and in them transported. The convenience and comfort of passengers has led to the introduction of special cars devoted to special uses, such as sleeping, parlor and dining cars. Carriers are not bound to furnish these special cars, and they may adopt reasonable regulations as to their use. The several classes of employees engaged in service upon a railroad train vary in the character of their duties and the places in which those duties are performed, their right to be in those places is because of their contract relation with the company and the duty which under that contract they are required to perform. When the contract relation is terminated the right of the former employee to remain in the same place upon the train in which his duties had formerly been discharged is at an end. When an engineer is properly discharged from his employment during a journey and notified that he is to leave his engine at a certain station, he cannot upon tendering the amount paid by a general passenger insist upon riding, as a passenger, in the cab of the engine; nor can a discharged baggage master insist upon riding, as a passenger, in the baggage car. When a former employee desires to become a passenger he must submit to the same regulations applicable to all other passengers. "A passenger, in the legal sense of the word, is one who travels in some public conveyance, by virtue of a contract, express or implied, with the carrier, as a payment of fare or that which is accepted as an equivalent therefor:" Pennsylvania Railroad Company v. Price, 96 Pa. 256. The defendant company had provided this dining car for a special purpose, not the transportation of general passengers; this plaintiff knew that fact and had express and repeated notice that he would not be carried in that car as a passenger. The plaintiff had not been accepted by the defendant company as a passenger, he was insisting upon remaining in a car in which he had no right to be, and it was

not only the right but the duty of the defendant to expel him: Bricker v. Philadelphia & Reading Railroad Company, 132 Pa. 1.

The refusal of the court below to permit the jury to pass upon the question of the right of the plaintiff to recover damages for his subsequent alleged false arrest and unlawful detention was, under the evidence, clearly right. The burden was, of course, upon the plaintiff to show that the defendant or some person having authority to act for it in that behalf had procured the arrest and detention. All that those representing the defendant company did was to direct that the plaintiff be removed from the dining car; this they had a right to do and to employ a city police officer for that purpose. The plaintiff's own testimony discloses that when he was first taken out of the dining car to the platform, he was released. He then ran back into the car, and while this express train was kept waiting, the city police officers again went in after him, brought him out, and it was then that he was placed under arrest by the police officer of the city and taken to the station house, where one of the city police officers preferred the charge of disorderly conduct against him. This clearly indicates that he was not arrested for anything which he had done before he was removed from the car; that the arrest, by the city police officer, was because of what was done in the presence of the officer, after the plaintiff had been taken from the car and released upon the platform. If the plaintiff was guilty of disorderly conduct in the presence and view of the city police officers they had the power and it was their duty to arrest him, and promptly lodge a charge against him. The only action of the representatives of the company disclosed by the testimony, in this connection, was a direction to the city police officers to remove the plaintiff from the car. The officers obeyed this instruction and the plaintiff was released upon the platform, the instructions of the company had been obeyed, and the plaintiff was free; his arrest manifestly came as a result of what he afterwards did in the presence of the police officers. There could be no recovery for the alleged false imprisonment because the evidence did not disclose that the arrest and detention for dis-

orderly conduct was by the direction of the officers of the defendant company: Decker v. Lackawanna & Wyoming Valley Railroad Company, 39 Pa. Superior Ct. 225. Even if it were assumed that the officers of the defendant company made the police officers of the city the servants of the company, for whose acts the company would be liable, by calling them to remove the plaintiff from the car, still the plaintiff would not have been entitled to go to the jury upon this question. The wrong charged in the statement, upon this branch of the case, and attempted to be established by the evidence, was false imprisonment. While an action for false imprisonment is not in some respects analogous to an action for malicious prosecution, there can be no question that in such action proof by the defendant that the imprisonment was by authority of law is a complete defense: McCarthy v. DeArmit, 99 Pa. 63. The evidence in this case established that the officer who made the arrest having preferred the charge of disorderly conduct, the defendant (this plaintiff) was, at a regular hearing before a magistrate having jurisdiction of the offense and of his person, adjudged guilty and fined, he paid the fine and costs, and made no attempt to appeal from or reverse the conviction. The evidence which established these facts was clearly admissible: McCarthy v. DeArmit, 99 Pa. 63; Neall v. Hart, 115 Pa. 347; Cooper v. Hart, 147 Pa. 594. It may here be observed that the arrest of the defendant, the charge against him and the prosecution terminated in a final judgment of conviction, by a tribunal having jurisdiction of the offense; the defendant, this plaintiff, permitted that judgment to become thus final, upon the question there involved. This case differs, in this respect, from Grohmann v. Kirschman, 168 Pa. 189, in which there had in the original prosecution been a verdict of not guilty, and is to be distinguished, also, from MacDonald v. Schroeder, 214 Pa. 411, in which there had been a verdict of guilty, which was set aside, and a new trial resulted in a verdict of not guilty. It was said in the case first cited that: "The true principle seems to be that in the trial of an action for malicious prosecution or false arrest a verdict of guilty is strong prima facie evidence of probable cause, but it may be

rebutted by proof that it was obtained by corrupt or undue means." Mr. Justice ELKIN, who spoke for the court in Mac-Donald v. Schroeder, said "The general rule on this question, recognized by text-writers, as well as by the courts of many states, is that a conviction in criminal proceedings is conclusive proof of probable cause unless procured by false or fraudulent testimony or other unlawful means." Let it be noted that Mr. Justice FELL, in stating the rule as above quoted from Grohmann v. Kirchman, was referring only to the effect of a "verdict" of guilty; while the rule as stated by Mr. Justice ELKIN refers to the effect of a "conviction." We find in Pennsylvania no case which holds that a judgment of guilty, by a court having jurisdiction of the offense and the person of the defendant, unreversed and unappealed from, is not conclusive evidence of probable cause for the prosecution, where there is no evidence whatever that the conviction was procured by false or fraudulent testimony or other unlawful means. We have in this case a conviction from which a presumption, at least, arose that there was probable cause for the arrest, and the plaintiff made no attempt to rebut that presumption by proof that the conviction was obtained by false or fraudulent testimony or other unlawful means; it follows, therefore, that the court below was right in instructing the jury that the plaintiff was not entitled to recover damages for his arrest and detention. The assignments of error by plaintiff are all dismissed. We do not make an order affirming the judgment, for the reason that upon the appeal by the defendant we have reached the conclusion that the judgment must be reversed without a venire.

The appeal of the plaintiff is dismissed at his cost.

No. 77, October Term, 1909. Appeal by the defendant in the above-entitled action.

The facts in this case have been sufficiently stated in the foregoing opinion in connection with the specifications of error in the appeal by the plaintiff. The defendant presented to the court below, at the trial, a written request for binding instructions in its favor, which the court refused. This ruling

is the subject of the only specification of error presented upon this appeal by the defendant. The plaintiff in his statement averred but two wrongs: (1) The trespass upon his rights as a passenger, in ejecting him from the train; and (2) his arrest and imprisonment. The court below held, and properly so, that the evidence did not establish that the plaintiff was a passenger and that the company had a right to eject him from the train, using so much force as was necessary. The court also held that the evidence established probable cause for the arrest and imprisonment of the plaintiff, and that there could be no recovery upon that ground. But the court submitted to the jury the question whether the servants of the defendant company had used undue force in ejecting the plaintiff from the car; and upon that question the jury found a verdict in favor of the plaintiff, upon which judgment was entered. If the plaintiff was entitled to recover anything he could only in this case recover upon the cause of action averred in his statement. Did the statement aver any such wrong as that for which the court below permitted a recovery? It is not necessary in this connection to consider the allegation as to the false arrest and unlawful imprisonment, for which we have held, in disposing of the appeal by the plaintiff, that the evidence established probable cause. We have only, therefore, to consider whether the evidence supported the averment of the statement that there had been a trespass upon the right of the plaintiff as a passenger, or his right to become a passenger, which allegation was, that "without any cause or justification whatever on the part of the defendant company or any of its employees or servants, he (the plaintiff) was seized with force and violence by several of the employees or servants of the defendant company, acting under the authority and instructions of the defendant company and in its behalf, and against his will and consent forcibly taken and ejected from the said train." The evidence established that the plaintiff had not been a passenger and that he had not offered himself and did not intend to offer himself as a passenger to be carried under conditions which the defendant company was required to accept, or under which it accepted other passengers. The plain-

tiff was a discharged employee who became insubordinate and refused to leave the place where he had been employed. The company had the right to eject him from that place and if in doing so they used undue force it did not involve any trespass upon the rights of a passenger. An allegation that a passenger has been wrongfully ejected from a train by the use of force, certainly is not supported by evidence that a discharged employee has been rightfully ejected from a car by the use of force, even although it establish that more than the necessary force was used in such expulsion. The plaintiff failed to prove the right which he averred to be on the train and the wrong with which he charged the defendant company in his statement. If in expelling the plaintiff from the dining car the servants of the defendant company used undue violence and wantonly inflicted upon him an unnecessary injury, he would for such injury have a cause of action, but when he attempted to recover it would be incumbent upon him to state that cause of action and not a cause of action for which there was no foundation: Wilkinson Manufacturing Company v. Welde, 196 Pa. 508; Mahoney v. Park Steel Company, 217 Pa. 20; Mahoney v. Philadelphia Rapid Transit Company, 214 Pa. 180; Stewart v. DeNoon, 220 Pa. 154; Kough v. Pennsylvania Railroad Company, 222 Pa. 175. The plaintiff was permitted to recover for a supposed trespass on a right which he had not averred in his statement and for a wrong of which the statement gave the defendant no notice. Even if it be assumed, moreover, that the statement sufficiently alleged the use of undue force in the rightful expulsion of the plaintiff from the car, the plaintiff was required to prove that material fact as an essential element of his right to recover upon such ground. There was no evidence whatever in this case that the police officers, in removing the plaintiff from the car, struck the plaintiff, or inflicted any injury upon him or used unnecessary violence. The plaintiff himself testified, as to this occurrence, as follows: "The station master signaled Mr. Hobbs to take me off, the time had expired, and take me off. So he signaled the officer to take me off, and he came and took me by the arm and carried me out." Those responsible for the operation of

the train were vested with authority to maintain discipline among the employees engaged in that operation and to preserve order among the passengers. In the exercise of that authority it was their right and duty to call to their assistance the servants of the defendant company, such officers of the civil government as were available for the purpose and such passengers as were willing to lend a helping hand: Pittsburg, Fort Wayne & Chicago Ry. Company v. Hinds, 53 Pa. 512; Pittsburg & Connellsville Railroad Company v. Pillow, 76 Pa. 510. The defendant company had the right to use so much force as was necessary to eject this plaintiff from the dining car, and thus permit the train which had already been considerably delayed to start and carry its passengers to their destination. If unnecessary force was used in accomplishing that result, the burden was upon the plaintiff to prove that fact. He failed to produce any evidence which warranted the submission of that question to the jury, and the defendant company was entitled to binding instructions.

The judgment is reversed.